IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK TOMEI, IN HIS CAPACITY AS LIMITED GUARDIAN OF VINCENT TOMEI AND AS EXECUTOR OF THE ESTATE OF MARIE TOMEI, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>OFFICE OF THE 32nd JUDICIAL DISTRICT DELAWARE COUNTY, *et al.*,<br><br>*Defendants*. | Case No. 2:20-cv-02429-JDW |

## MEMORANDUM

The Court does not have the power to make the world a perfect place. If it could, Jim Fregosi would not have pulled Roger Mason in Game 6 of the 1993 World Series, the Phillies wouldn't have traded Ryne Sandberg for Ivan DeJesus, and the 76ers would have drafted Brad Daugherty instead of trading for Roy Hinson. And, of course, Simba would have never gone down into that gorge. But courts only have the power to grant relief afforded under the law. Instead, parties must live with the wisdom of Timon: "Look kid. Bad things happen, and you can't do anything about it . . . ."[1]

Plaintiffs Vincent Tomei and the Estate of Marie Tomei have had some rotten luck. As a result of human error, a state trial court did not docket timely filings that it received. The result was that the Pennsylvania Superior Court concluded that the Tomeis had waived issues on appeal because of that mistake. And, even after the trial

---

[1] THE LION KING (Walt Disney Feature Animation 1994).

court fixed the error, the Superior Court and the Pennsylvania Supreme Court refused to revisit that decision. Now, having lost their chance at a state court appeal, Plaintiffs want to hold someone, anyone, responsible. So they ask the Court for leave to file a Third Amended Complaint ("TAC") alleging that Angela Martinez's constitutional violation caused the error. While Plaintiffs have suffered a harm, they have not pled facts to establish a constitutional violation that the Court can remedy. So, although the Court sympathizes with Plaintiffs' position, it must deny their Motion because their proposed TAC is futile.

I.   **BACKGROUND**

   A.   **The Delaware County Litigation**

By this point, the facts of the case are well-known to the Parties and the Court. In 2015, Vincent Tomei and H&H Manufacturing Company sued Thomas Tomei in the Pennsylvania Court of Common Pleas for Delaware County. Marie Tomei intervened in that case. Marie died during the pendency of the case, and her Estate substituted as a party. (For convenience, the Court will continue to refer to her estate as "Marie.") In 2017, the Delaware County Court held a bench trial and ruled for Thomas and against Vincent. It entered a judgment that included a substantial award of attorneys' fees. The Court also awarded Marie shares in H&H.

H&H, Vincent, and Marie filed timely post-trial motions. They submitted those filings to the Delaware County Office of Judicial Support ("OJS"), which is both the Office of the Clerk and the Prothonotary in Delaware County. Throughout the *Tomei* litigation, Angela Martinez was the director of the OJS.

H&H, Vincent, and Marie filed their post-trial motions under seal. However, it appears that a processing clerk in OJS did not enter those motions on the docket. Instead, he put them into a sealed envelope without processing them. The trial court denied the post-trial motions in April 2018. Vincent and Marie noticed timely appeals, and both of them filed Concise Statements of Matters Complained of on Appeal. They filed those documents under seal, and a similar error happened. The docketing clerk did not docket those submissions.

As a result of the docketing errors in the OJS, the certified record that the trial court sent to the Superior Court did not include any record of post-trial motions or of the Concise Statements. In July 2018, Vincent's counsel wrote to someone in OJS identified only as "Delia," asking her to docket the post-trial motions. That did not happen. Because these filings were not on the docket or in the certified record, the Superior Court concluded that Vincent and Marie had waived their appeals in an opinion dated May 22, 2019.

On May 30, 2019, the trial court heard argument on an Emergency Motion to Correct the docket. The Court granted that motion and directed OJS to correct the docket and to send the corrected docket to the Superior Court. The Superior Court nonetheless denied a motion to reconsider or for reargument, and the Pennsylvania Supreme Court denied a Petition for Allowance of Appeal.

**B.     Procedural History**

On May 21, 2020, Marie and Vincent filed separate complaints in this Court. Each of them then filed an Amended Complaint. The Court consolidated the two cases and ordered the parties to file a consolidated, second amended complaint (the

3

"SAC"), which they did. In the SAC, they asserted claims against the Office of the 32nd Judicial District of Delaware County (the "Common Pleas Court"), the Office of Judicial Support, and Ms. Martinez in her individual and official capacities. They asserted a claim under 42 U.S.C. § 1983 for violating their due process rights and pendant claims under state law.

Defendants moved to dismiss the amended complaint. On November 20, 2020, the Court granted the motion to dismiss with prejudice for the claims against the Common Pleas Court, the Delaware County Office of Judicial Support, and Ms. Martinez in her official capacity, and granted the motion to dismiss without prejudice against Ms. Martinez in her individual capacity.

On January 25, 2021, Plaintiffs filed a Motion For Leave To File An Amended Complaint. The TAC, attached as Exhibit A to the Motion, would assert two claims against Ms. Martinez in her individual capacity under 42 U.S.C. § 1983 for violating their due process rights. Ms. Martinez has responded that, among other things, any amendment would be futile because the doctrine of qualified immunity protects her.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 15 conditions amendment of a pleading on the court's leave or the opposing party's written consent. The rule instructs courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal amendment regime helps effectuate the "general policy embodied in the Federal Rules favoring resolution of cases on their merits." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). The factors set out in the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178 (1962), guide a court's decision about whether to permit an

4

amendment. A court may deny leave to amend based on undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, prejudice to the opposing party, and futility. *Id.* The *Foman* factors are not exhaustive, allowing a court to ground its decision, within reason, on consideration of other equitable factors, such as judicial economy/burden on the Court and the prejudice denying leave to amend would cause to the Plaintiffs. *See USX Corp. v. Barnhart*, 395 F.3d 161, 167-68 (3d Cir. 2004).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). In determining whether a claim would be futile, "the district court applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).

### III. ANALYSIS

The Court evaluates the viability of the proposed amended complaint through the prism of qualified immunity. In determining whether qualified immunity applies, a court must "first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Eddy v. Virgin Islands Water & Power Auth.*, 256 F.3d 204, 208 (3d Cir. 2001). If so, then

the court must determine "whether that right was clearly established at the time of the alleged violation." *Wilson*, 526 U.S. at 609.

### A. Constitutional Violation

The TAC would assert a claim against Ms. Martinez for supervisory liability under Section 1983. There are two ways of imposing supervisory liability: if the supervisor (a) "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in [her] subordinates' violations," *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010); or (b) if, "with deliberate indifference to the consequences, [she] established and maintained a policy, custom, or practice which directly caused the constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

#### 1. Personal participation

The TAC does not allege that Ms. Martinez was the person who mis-filed pleadings in the Delaware County litigation. Nor does it allege that she directed others within OJC to mis-file those pleadings. So, if the Tomeis want to allege Ms. Martinez's personal participation, they would have to allege that she knew about and acquiesced in the erroneous filings. They have not made those allegations, though.

The Tomeis allege in the TAC that Ms. Martinez was aware of the mis-filings, but their own exhibits call that allegation into question. They reference a letter they sent to OJS. They did not attach the letter to the TAC, but they attached it to the SAC as Exhibit M, so the Court may consider it. The letter gives no indication that Ms. Martinez ever saw the letter or had any knowledge of its existence. It was addressed

to the "Office of Judicial Support" with attention to "Delia," not to Ms. Martinez. (ECF No. 8 at Ex. M (p. 166).) The Tomeis have not alleged that she saw it or had knowledge of it. They argue Ms. Martinez "had knowledge of the pattern of mis-filings," (ECF No. 20, Ex. A at ¶ 29), but they do not allege that she acquiesced in those mis-filings. Given that the mis-filings appear to have been mistakes, rather than intentional acts, it is hard to fathom how Ms. Martinez could have acquiesced in someone's mistake. The Tomeis allege that Ms. Martinez did not correct the mis-filings, but their own exhibit indicates Ms. Martinez took corrective action as soon as she was aware of the error. (ECF No. 8, Ex. O at 29-30.) The TAC does not allege facts to establish Ms. Martinez's personal participation in any mis-filing or error.

### 2. Deliberate indifference

To establish supervisory liability under the deliberate indifference test, a plaintiff "must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk[,] and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure." *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001). It is not enough for a plaintiff to argue just that the supervisor should have done more than she did. Instead, the plaintiff must "identify specific acts or omissions of the supervisor that evidence deliberate indifference and persuade the court that there is a relationship between the identified deficiency and the ultimate injury." *Id.*

7

The Tomeis have not met this burden. For starters, they have not identified a specific supervisory practice or procedure that Ms. Martinez failed to employ. The TAC asserts that the failure of the filing clerk was the result of Ms. Martinez's failure to "train her staff on the rules governing the entry of final judgments." (ECF No. 20, Ex. A at ¶ 17.) It then claims that Ms. Martinez had a "duty to ensure that the OJS had policies, practices, training, and supervision" in place to function properly. (*Id.* ¶ 28.) But the TAC does not "identify specific acts or omissions of the supervisor" that made the OJS not function properly. *Brown*, 269 F.3d at 216. It just makes vague assertions that Ms. Martinez "failed to promulgate policies and procedures as to the proper filing and transmittal of appeal papers, and by failing to properly train and supervise OJS staff on these matters." (ECF No. 20, Ex A. at ¶¶ 30, 34.) Ms. Martinez's testimony at a hearing before the state trial court, which Plaintiffs cite to in their TAC, establishes that there was a policy in place for handling documents filed under seal, but the processing clerk did not follow that policy and "misunderstood the process." (ECF No. 8, Ex. O at 26-27; ECF No. 20, Ex. A at ¶ 38.)

To the Tomeis, this all occurred because of some general, unspecified failure on Ms. Martinez's part to implement policies and practices. But Ms. Martinez could not train her employees never to make a mistake. It would be nice to live in such a perfect world, but that is not an articulable, specific practice under a theory of supervisory liability. The closest the Tomeis come to articulating a specific policy or practice that affected their rights was that the OJS used a paper filing system rather than an electronic filing system. But they do not allege that Ms. Martinez made the decision to

8

use paper rather than computers, nor is it clear that doing so created an unreasonable risk of error.

Even if the Tomeis had articulated a supervisory practice or procedure, the TAC would be futile because it does not allege that the practice or procedure created an unreasonable risk of failure. Nor do they allege that Ms. Martinez was aware of and indifferent to that risk. They point to the letter sent to OJS, but without an allegation that Ms. Martinez saw that letter, it does not make it plausible that Ms. Martinez was aware of any particular risk, either in their case or more generally. And, it bears repeating that the Tomeis' own submission suggests that Ms. Martinez tried to correct the error when she learned of it, which undermines any suggestion of indifference. Finally, the Tomeis do not allege the necessary causal link between Ms. Martinez's conduct and the clerk's human error. In short, the TAC does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly*, 809 F.3d at 786. Therefore, it would be futile to grant the Motion to Amend.

### B.    Clearly Established Right

Qualified immunity shields government officials conducting discretionary tasks from civil damages liability "unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Courts should not "define clearly established law at a high level of generality." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 716 (3d Cir. 2018). A court need not identify a case directly on point for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017); see also *Ashcroft*

9

*v. al-Kidd*, 563 U.S. 731, 741 (2011) ("A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.").

The Tomeis have not identified a clearly established right that Ms. Martinez violated. They cannot rely on vague assertions to violations of the right to due process of law, as courts should not "define clearly established law at a high level of generality." *Sauers*, 905 F.3d at 716. Ms. Martinez did not infringe on Plaintiffs' right to appeal their case, contrary to Plaintiffs' assertions. Indeed, they did appeal their case. (ECF No. 20, ¶¶ 20, 32-33.) It appears the crux of their claim centers on the idea that they had a clearly established right to be free from mistakes in the court system. While the court system should strive to the highest levels of professionalism and work product, mistakes happen. There is no clearly established constitutional right that a supervisor must ensure her clerical staff never err. Because Plaintiffs have not identified a specific clearly established right that Ms. Martinez violated, she is entitled to qualified immunity, making the Third Amended Complaint futile on additional grounds.

## IV. CONCLUSION

There is a difference between a mistake and a civil rights violation. Employees in the Office of Judicial Support made mistakes, and those mistakes prejudiced Plaintiffs. But Plaintiffs have not pled plausible claims that those mistakes resulted from a supervisor's violation of their constitutional rights. Allowing the Plaintiffs to file their Third Amended Complaint, like pining over what could've been on that day in late October 1993, would therefore be futile.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

March 10, 2021